## A. G. CRUNKLETON ELECTRIC COMPANY, INC. ET AL. *v.* BARKDOLL

[No. 125, September Term, 1961.]

366

*Decided January 23, 1962.*

The cause was argued before HAMMOND, HORNEY, MARBURY and SYBERT, JJ., and DUCKETT, J., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*Evan Crossley,* with whom were *Crossley & Latimer* on the brief, for the appellants.

*William J. Dwyer* for the appellee.

MARBURY, J., delivered the opinion of the Court.

Albert L. Barkdoll, claimant and appellee, was employed by the appellant, A. G. Crunkleton Electric Company, Inc. On November 26, 1951, Barkdoll, during the course of his employment, sustained fourth and fifth degree burns on both arms and as a result of these injuries had to undergo a bilateral amputation. Each arm was amputated about four inches below the shoulder.

He was hospitalized for a long period of time following this accident, both for treatment and attempted rehabilitation. For approximately two years after the accident he was furnished with nursing services. By way of workmen's compensation the employer-insurer, U. S. F. & G. Co., the other appellant, paid him the maximum benefits allowable under the existing statutes for both temporary total disability and permanent total disability. As soon as his arms were sufficiently healed,

he was furnished with artificial arms. Due to the shortness of the stumps he is unable to use these very effectively. The record discloses that he can remove his clothes, but he cannot dress himself. He must have help in going to the toilet. He can only write by holding a pencil in his teeth, and can not use a cradle-type telephone, but he has found an old style telephone which he can operate. He has learned to type fairly well. Using his artificial arms he can drive a tractor but he must have someone to start it; if any difficulty develops he cannot make any repairs or service the machine. When he is at the table he can use his claw to lift food to his mouth that adheres to a fork, but anything else must be fed to him.

Barkdoll has been fitted with the latest models of artificial arms available, but with only minimum success, whereupon a specialist recommended that he undergo a cyineplasty procedure. This consisted of a graft on his right chest over the pectoral muscle, which formed a tunnel. A cable ran from the tunnel to an artificial arm, and it was hoped that by the use of the pectoral muscle he could have better control and use of the claw. This method did not improve the use of the artificial limb. This tunnel must be cleaned every day to avoid infection, and he is unable to do this.

The appellee at present is living in a small house on a tract of land, about ten acres, with his wife and two children. His mother-in-law lives nearby, and assists his wife in taking care of him. The amount he earns with the tractor appears to be nominal. He receives an annual allowance from the Veterans Administration of $2,700 for a non-service connected disability.

The Workmen's Compensation Commission entered an award for the appellee, directing the employer and insurer (appellants), to furnish the appellee necessary nursing service beginning as of June 23, 1960. Appellants then appealed to the Circuit Court for Washington County, which affirmed the award of the Commission. From the order of that court the appellants bring this appeal.

The appellants present three questions for our determination:

1. Did the Code (1951), Article 101, Section 36 (a) authorize the Workmen's Compensation Commission to award medical and nursing service beyond the period of compensation paid for disability?

2. Is a wife entitled to receive compensation for nursing services performed for her husband?

3. Was the lower court in error in its finding that the disability of the appellee was such as to justify an award for nursing attendance?

We will proceed to discuss each question in the order set forth above.

Code (1951), Article 101, Section 36 (a), applicable to the present case, provides as follows:

"In addition to the compensation provided for herein the employer shall promptly provide for an injured employee such medical, surgical or other attendance or treatment, nurse and hospital services, medicines, crutches, apparatus, artificial hands, arms, feet and legs as may be required by the Commission."

It is clear from the above that the liability of the employer to furnish free nursing services and treatment is not subject to a period of limitation. The section, we think, empowers the Commission to order nursing care beyond the obligatory period of compensation and in addition to other benefits provided in the Workmen's Compensation Law if the circumstances merit such additional financial aid. In order to sustain the appellants' contention to the contrary, we would have to rewrite the statutes so as to provide for a limitation which is not contained therein.

In 2 Larson, *Workmen's Compensation Law,* § 61.11 the author states that an integral and important part of the benefit scheme of all compensation acts is the provision of hospital and medical benefits. A tabulation of those states which provide for benefits, shows that a great majority of the states provide full benefits. Moreover, in a table contained in his work, Professor Larson categorizes Maryland as one of those states providing full benefits.

In support of their position appellants cite *Meuse's Case*

(Mass.), 169 N. E. 516; *Simpson's Case* (Me.), 66 A. 2d 417; *Bedard v. Public Service Co.* (N. H.), 156 A. 2d 772. It is manifest that these decisions must be read in the light of the particular statute in each state. An examination of these cases indicates that the legislature of those states intended a specific limit on these benefits, and while a certain amount of discretion was vested in the commission, this discretionary power must not exceed the realm of the legislative intent. Here, in Maryland, no reference whatsoever as to time or amount limitations is provided in the statute.

The same argument urged upon us by the appellants was specifically rejected in the recent case of *Downs v. Miller,* (Ark.), 271 S. W. 2d 623, where that court ruled that if its workmen's compensation commission did not have authority to pass an award for medical service after the period for the payment of compensation had expired, its legislature would have so provided. See also 99 C.J.S. 927; *Lahti v. Fosterling,* (Mich.), 99 N. W. 2d 490.

Appellants also contend that the recent amendment to Code (1957), Article 101, Section 37 (a) (formerly Code (1951), Article 101, Section 36 (a)) by Chapter 32 of the Acts of 1960, by inserting the words: "for such period as the nature of the injury may require," indicates a legislative recognition of the fact that it had not previously provided for a period of medical or nursing services that would extend beyond the period for permanent partial or permanent total disability compensation. The Report of the Legislative Council to the General Assembly of 1960, p. 191, says the amendment was to clarify a doubt as to the length of the period for which care could be required.

The title of the Act says it is an act "to change the period of time for furnishing of medical care."

This, it is argued, shows legislative recognition that the Act prior to its amendment did not provide for indefinite medical and nursing care. A subsequent legislative construction of the meaning of a prior statute is not binding or controlling on the Court, *Marburg v. Mercantile Trust Co.,* 154 Md. 438, 140 Atl. 836; *Gibson v. State,* 204 Md. 423, 104 A. 2d 800. *Annapolis v. Arundeland, Inc.,* 205 Md. 170, 177, 106 A.

2d 493; *Congressional School v. Roads Comm.*, 218 Md. 236, 146 A. 2d 558. Appellee's rights stem from the Act as it stood in 1951 when he was injured and as we read that Act it permits the order the Commission passed.

We, therefore, hold that the Workmen's Compensation Commission acted within its authority under the applicable law when it ordered payment for nursing services required by the appellee after the period of permanent total disability compensation and that this is in accord with the general purpose of the Workmen's Compensation Law of Maryland.

Appellants' next contention is that the appellee's wife is not entitled to receive compensation for nursing services performed for her husband. This raises a question novel in this State. Ordinarily nursing services, when necessary and authorized, are part of any workmen's compensation law, and the injured employee, when it is required, is entitled to nursing services at home or in a hospital. There is no dispute on this point. However, when a member of the employee's immediate family (wife), as here, is involved, a conflict of judicial opinion arises.

The cases which deny such allowances (compensation to the wife) do so on the grounds that the services rendered constitute a duty imposed by the marital relationship and for which the husband would not be liable in suit for *quantum meruit*, nor can the wife recover in a suit against a third party. Other cases have held, in the absence of a showing that the wife had given up other employment to care for her husband, that such a claim would not be allowed. For cases denying the allowance to a wife, see *Claus v. De Vere* (Neb.), 235 N. W. 450; *Graf v. Montgomery Ward* (Minn.), 49 N. W. 2d 797; and *Galway v. Doody Steel Erecting Co.* (Conn.), 130 Atl. 705.

However, other states have adopted the so-called "modern rule" as enunciated by Professor Larson, and have permitted such payments to a wife on the grounds that when the wife was employable she was entitled to compensation for caring for her husband, or, that the services required were of an extraordinary nature and not those contemplated by the usual marital relationship and, therefore, she would be entitled to

be recompensed for the same. *California Casualty Ind. Exch. v. Industrial Acc. Com'n* (Cal.) 190 P. 2d 990; *Daugherty v. City of Monett* (Mo.), 192 S. W. 2d 51; and *Berkowitz v. Highmount Hotel,* 120 N. Y. S. 2d 600. See also 2 Larson, *Workmen's Compensation Law,* § 61.13.

In the case of *Bushnell v. City of Duluth* (Minn.), 62 N. W. 2d 813, an unmarried man, paralyzed from the waist down, lived with his mother. The mother was allowed compensation for her services as a practical nurse. In the instant case the wife is being assisted by her mother in caring for the appellee. Moreover, in *Brown v. Dennis* (Fla.), 114 So. 2d 335, the wife was held entitled to an award for services rendered in caring for her disabled husband. To the same effect is *Brinson v. Southeastern Utilities* (Fla.), 72 So. 2d 37.

Upon examination of our statute we find no requirement that the employee employ a hired nurse. It simply holds the employer liable for "nurse and hospital services." Of course, the nature of the appellee's injuries does not require a registered nurse or a practical nurse as defined by Code (1957), Article 43. There is no definition in the Workmen's Compensation Law for the word "nurse". It is a broad and comprehensive term and encompasses the care and attendance necessary in each case. Section 28 A, *Words and Phrases, 797,* and cases cited therein.

When construing workmen's compensation statutes, the rule that statutes in derogation of the common law are to be strictly construed does not apply and they shall be so interpreted and construed as to effectuate their general purpose. *Rumple v. Henry H. Meyer Co., Inc.,* 208 Md. 350, 360, 118 A. 2d 486.

Bearing this in mind we are of the opinion that the term "nurse and hospital services" contemplates the practical though not necessarily licensed nursing which is required for the appellee. The services rendered by the wife were not minor in character, or of such a nature so as to be classified as ordinary household duties. We think it is clear that the duties performed by the wife in this case were extraordinary, unusual, and clearly above and beyond the usual call of any marital obligation. Accordingly, we think the ruling of the

court below affirming the award by the Commission for nursing services rendered by the wife was proper.

Appellants' last contention suggests that there is no evidence that claimant could not perform any work regardless of its nature.

We have held that if there is any evidence from which a rational conclusion to support a workmen's compensation claim may be drawn the weight and value of that evidence must be left to the trier of facts, and it is not the function of a reviewing court to determine the comparative weight of the conflicting evidence. *Bethlehem Steel Co. v. Jones*, 222 Md. 54, 158 A. 2d 621.

Here, Mr. Charles Herbert Dankmeyer, a prosthetist, who testified on behalf of the appellant, stated that he did not have a case involving such short stumps as appellee had. It could be inferred from his testimony that he had never, in his twenty-five years of experience, encountered such a difficult case where a bilateral amputee was involved. Dr. John A. Moran, attending physician, was asked on direct examination: "From your experience as a surgeon and dealing with cases, just how much has the prosthesis industry progressed in the last ten years?" His answer was: "In this type of case, not very much." At another point during his testimony he stated that after talking to a great many prosthetists and mechanical engineers in industry concerning appellee's problem, no one offered any practical solution. Dr. Moran stated that the appellee can not take care of the tunnel himself. These facts in conjunction with the earnest attempt by the appellee to utilize all medical science techniques available in this particular case, constituted competent and substantial evidence that the disability of the appellee was of such an extent as to justify an award for nursing attendance. Maryland Rule 886.

Finding no error in the rulings of the trial court the order must be affirmed.

*Order affirmed, with costs.*